NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| L.Y., on behalf of J.Y. and ELYSIAN CHARTER SCHOOL OF HOBOKEN, | : : : | Civil Action No. 10-05698 (SRC) |
| Plaintiff, | : : | **OPINION** |
| v. | : : | |
| BAYONNE BOARD OF EDUCATION, ROCHELLE HENDRICKS, INTERIM COMMISSIONER OF EDUCATION FOR THE STATE OF NEW JERSEY, in her official capacity, and the NEW JERSEY DEPARTMENT OF EDUCATION. | : : : : | |
| Defendants. | | |

**CHESLER**, District Judge

   This matter comes before the Court upon Defendants Rochelle Hendricks', Interim Commissioner of Education for the State of New Jersey, and the New Jersey Department of Education's (collectively, " State Defendants") motion to dismiss Plaintiff's Complaint (docket item #1) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has filed an opposition to the motion. The Court has considered the papers filed by the parties and rules on the written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant the motion to dismiss.

I.  **BACKGROUND**

This case arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and involves a dispute over the 2009-2010 Individualized Education Program ("IEP") developed for J.Y., the son of Plaintiff L.Y.  J.Y. is a thirteen-year-old boy who resides in the City of Bayonne.  He has attended Elysian Charter School ("Elysian") since 2002. In 2002, Elysian's IEP team performed an evaluation of J.Y. and classified him as having learning disabilities requiring special instruction.  Beginning in 2002 and for school years thereafter, Elysian formulated IEPs for J.Y., which involved special education services provided at the school.  The IEP developed for J.Y.'s 2009-2010 school year, however, called for placement at the Community School, a private school for the disabled located outside of the Bayonne School District ("Bayonne").  Under the IEP, the placement at the Community School was to begin in September 2009.  J.Y.'s mother, L.Y., approved of the 2009-2010 IEP and signed it on June 9, 2009.

The Bayonne School District was not involved in the creation of the June 9, 2009 IEP. Rather, as required by law, Elysian notified Bayonne of J.Y.'s placement in a private day setting. Exercising its statutory right to contest the placement under N.J.S.A. § 18A:36A-11(b), Bayonne initiated a due process hearing with the Department of Education, claiming that an in-district placement would provide J.Y. with a free and appropriate public education in the least restrictive environment, as required by the IDEA.  This case varies from the ordinary IEP dispute under the IDEA in that it involves three interested parties: the student (and his parent), the charter school he attended and which was involved in creating the challenged IEP, and the resident school district which bears financial responsibility for implementation of the IEP.  Plaintiff argues that

2

N.J.S.A. § 18A:36A-11(b) conflicts with the IDEA and violates the Supremacy Clause of the United States Constitution by allowing a district of residence, a non-IEP team member, to unilaterally prevent implementation of an individualized education program.  As such, Plaintiff contends that State Defendants violated the provisions of the IDEA by asserting their rights under N.J.S.A. 18A:36A-11(b).

II.  LEGAL ANALYSIS

A.  **Standard of Review**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims have facial plausibility.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).  This means that the Complaint must contain sufficient factual allegations to raise a right to relief above the speculative level, assuming the factual allegations are true.  *Id.* at 1965; *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  The Supreme Court has made clear that "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65; *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196.  The issue before the Court "is not whether

3

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support

of the claims." *Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420 (quoting *Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974)).

      **B.**    <u>**Discussion**</u>

      The Individuals with Disabilities Education Act obliges states in receipt of federal

funding to guarantee a "free and appropriate education" ("FAPE") to all children with

disabilities. 20 U.S.C. § 1412(a)(1)(A). "Educational instruction specially designed to meet the

unique needs of the handicapped child," coupled with services "necessary to permit the child to

'benefit' from the instruction" constitute a FAPE. *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751,

756 (3d Cir. 1995). For each child identified as eligible for special education, a written statement

called an Individualized Education Program is developed. The IEP, which addresses and

includes several elements as provided under 20 U.S.C. § 1414(d)(1)(A), is designed to ensure

implementation of a FAPE of the child. *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d

260, 264 (3d Cir. 2003). In addition to defining the content required, the IDEA provides that an

IEP should be developed considering the strengths of the child, concerns of the parents, and

recent evaluations of the child. *Id*. Each IEP must include an assessment of the child's current

educational performance, must articulate measurable educational goals, and must specify the

nature of the special services that the school will provide. *Id*. Notably, parents are included as

members of IEP teams. 20 U.S.C. §1414(d)(1)(B). The process of creating an IEP is the "central

vehicle" for collaboration between the child's parents and his school to accomplish the goals of

the IDEA. *Schaffer v. Weast*, 546 U.S. 49, 53 (2005).

      Moreover, a child with a disability must be educated in the "least restrictive environment"

("LRE") that will provide the student with a meaningful educational benefit.  20 U.S.C. §

1412(a)(5)(A); *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 578 (3d Cir. 2000).  "The

least restrictive environment is one that, to the greatest extent possible, satisfactorily educates

disabled children together with children who are not disabled, in the same school the disabled

child would attend if the child were not disabled." *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520,

535 (3d Cir. 1995).  Further, special classes or removal of children with disabilities from the

regular educational environment can occur only when the nature or severity of the student's

disability is such that education in the regular education classes cannot be satisfactorily achieved,

even with the use of supplementary aids and services.  20 U.S.C. § 1412(a)(5)(A); N.J.A.C.

6A:14-4.2.

     In instances in which the child attends a charter school, as in this case, it is the charter

school that is responsible for providing special education services to disabled students, including

working with a child's parents to develop an IEP.  N.J.S.A. 18A:36A-11(b).  Though a charter

school is a public school, it is operated independently of a local board of education.  N.J.S.A.

18A:36A-3.  The school district where the child resides, however, bears fiscal responsibility for a

child's special education services where the IEP developed by the charter school and the child's

parents requires placement at a private day or residential school.  N.J.S.A. 18A:36A-11(b).

Though the statute imposing such fiscal responsibility on the school district of residence does not

affirmatively give the school district the right to participate in the creation of a charter school

student's IEP, it does offer the resident district an opportunity to challenge the IEP agreed-to by

the charter school and the parents.  *Id*.  Specifically, the statute provides:

     Within 15 days of the signing of the individualized education plan, a

> charter school shall provide notice to the resident district of any
> individualized education plan which results in a private day or residential
> placement. The resident district may challenge the placement within 30
> days in accordance with the procedures established by law.

*Id*.  Though the statute itself nor the legislative history indicate what kind of procedures

the challenge would entail, the parties to the case before the Court have agreed that the

appropriate challenge would be a due process hearing pursuant to New Jersey regulations

which permit a district of residence to challenge whether there is a less restrictive

placement that will meet the student's educational needs and, if so, whether the charter

school must place the student in such program.  N.J.A.C. 6A:23A-15.4.  In any event, that

issue is not before the Court.  Plaintiff here alleges that N.J.S.A. 18A:36A-11(b) conflicts

with numerous procedural rights of the IDEA in violation of the Supremacy Clause.

It is well-established that under the Supremacy Clause of the United States

Constitution, state laws that "interfere with, or are contrary to" federal law are preempted

and invalid.  U.S. Const. art. VI, cl. 2.  Preemption can take one of three forms: (1)

express preemption, where Congress passes a statute that by its express terms preempts

state law; (2) implied preemption, where federal legislation is sufficiently comprehensive

to make reasonable the inference that Congress left no room for supplementary state

regulation; and (3) actual preemption, where Congress speaks neither expressly nor

impliedly of preemption, but state law is nonetheless preempted to the extent that it

actually conflicts with a federal statute or rule.  *Int'l Paper Co. v. Ouellette,* 479 U.S. 481,

491-99 (1987).  Actual conflict arises when compliance with both federal and state

regulations is a physical impossibility, or when state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress. *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990).

When addressing questions of express or implied preemption, we begin our analysis "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). That assumption applies with particular force when Congress has legislated in a field traditionally occupied by the states, like education. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *see United States v. Lopez*, 514 U.S. 549, 564 (1995). Thus, when the text of a preemption clause is susceptible of more than one plausible reading, courts ordinarily "accept the reading that disfavors pre-emption." *Bates*, 544 U.S. at 449. The burden is on the party challenging the constitutionality of the statute to demonstrate clearly, beyond a reasonable doubt, that it violates a constitutional provision. *Newark Superior Officers Ass'n v. City of Newark*, 486 A.2d 305, 311 (1985); *see State v. Muhammad*, 678 A.2d 164, 173 (1996).

The Plaintiff here asserts that N.J.S.A. 18A:36A-11(b) violates the following procedural rights afforded to parents under the IDEA: 1) to have parental participation in program decision-making; 2) to have the IEP team be the exclusive program decision-makers; 3) to receive advance notice of a school agency's proposal to change their child's program; 4) to receive a detailed written description of the program offered by an educational agency; and 5) to have their child's IEP immediately implemented. According to Plaintiff, because N.J.S.A. 18A:36A-11(b) disregards these rights, it

conflicts with the IDEA and is therefore unconstitutional both on its face and as applied in this case.

A facial challenge to a legislative act is the most difficult challenge to mount successfully since the challenger must establish that no set of circumstances exists under which the act would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987). The practical effect of a court ruling that a statute is unconstitutional on its face is to render it "utterly inoperative." *Ada v. Guam Soc'y of Obstetricians & Gynecologists*, 506 U.S. 1011, 1011 (1992) (Scalia, J., dissenting). When addressing facial challenges to the constitutionality of a statute, our focus is on whether the statute's language violates the constitution, not whether the statute would be unconstitutional 'as applied' to the facts of a particular case.

Congress intended to establish a "cooperative federalism" through the IDEA. *See Town of Burlington v. Dep't of Educ. of Mass.*, 736 F.2d 773, 785 (1st Cir. 1984), *aff'd sub nom. Burlington Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359 (1985). The Court in *Burlington* described this concept, stating that

> compliance with the minimum standards set out by the federal act is mandatory for the receipt of federal financial assistance, (but) the act does not presume to impose nationally a uniform approach to the education of children within a given disability; it requires only that a "free appropriate education," 20 U.S.C. § 1412(I), in conformity with the state's educational standards, 20 U.S.C. §§ 1401(18), 1412(6), be provided to each disabled child upon individualized education and planning.

736 F.2d at 784. Thus, the IDEA does not preempt state law if the state standards meet the minimum federal guidelines.

8

As indicated above, N.J.S.A. 18A:36A-11(b) provides that a resident district may challenge the placement of the individualized education plan determined by the IEP team of a charter school. The purpose of N.J.S.A. § 18A:36A-11(b) is to permit the actor bearing fiscal responsibility for the IEP's implementation to challenge, before an administrative law judge, whether the out-of-district placement will meet the student's educational needs in the least restrictive environment. Because a resident district's challenge to an IEP is limited to a review of the restrictiveness of the program's placement, N.J.S.A. § 18A:36A-11(b) does not preclude charter schools from complying with IDEA requirements such as identifying and evaluating disabled children, developing an IEP for each child, assessing the child's current educational performance, articulating measurable educational goals, specifying the nature of the special services a child needs, and reviewing every IEP at least once a year. Furthermore, even if an administrative law judge finds that an in-district placement is appropriate to a student's educational needs, it is the charter school that will provide all child study team services for the student, including the in-district development of the IEP together with the child's parents. N.J.A.C. § 6A:23A-15.4(b). Therefore, the ability of a resident district to challenge a student's placement does not render compliance with both federal and state regulations a "physical impossibility."

In addition, N.J.S.A. 18A:36A-11(b) does not stand as an obstacle to the accomplishment of the full purposes and objectives of Congress under the IDEA. The IDEA mandates that a child with a disability be educated in the least restrictive environment which is one that, to the greatest extent possible, satisfactorily educates

9

disabled children together with children who are not disabled, in the same school the

disabled child would attend if the child were not disabled.  20 U.S.C. § 1412(5)(B)

(requiring maximal educational integration of disabled children with children who are not

disabled, and restricting separate schooling to situations when the nature or severity of the

disability is such that education in regular classes with the use of supplementary aids and

services cannot be achieved satisfactorily.)  This provision of the IDEA sets forth a strong

congressional preference for integrating children with disabilities in regular classrooms

and creates a presumption in favor of mainstreaming.  The N.J.S.A. 18A:36A-11(b), in

permitting challenges to the restrictiveness of a program's placement, furthers compliance

with the IDEA by ensuring that students with disabilities are placed in the least restrictive

environment.

        Furthermore, while procedural violations that "seriously infringe upon the

parents' opportunity to participate in the IEP formulation process . . . 'clearly result in a

denial of FAPE,'" no such procedural deprivations occur under N.J.S.A. 18A:36A-11(b).

*A.I. v. District of Colombia*, 402 F. Supp. 2d 152, 164 (D.D.C. 2005); *see Bd. of Educ. of

the Hendrick Hudson Central Sch. Dist v. Rowley*, 458 U.S. 176, 205-07 (1982).  The

major thrust of Plaintiff's argument is that N.J.S.A. 18A:36A-11(b) undermines

Congress' charge that parents, together with the IEP team members, are to determine a

child's individualized education program because the statute allows a non-IEP team

member to challenge and prevent a decided-upon IEP.  However, in a due process

challenge, the resident school district is prohibited from disputing whether a child is in

fact disabled, the development of the IEP, or the nature of the special services determined

10

by the IEP team.  The N.J.S.A. 18A:36A-11(b) merely provides a district of residence

with an opportunity to demonstrate that it can provide the educational placement that was

determined by the IEP team, in-district.  In the event that an administrative law judge

determines a less restrictive placement will meet the student's educational needs, the

charter school continues to provide all study team services for the student, including the

development of an IEP and the monitoring of its implementation.  N.J.A.C. § 6A:23A-

15.4(b).  As such, the IEP team, which includes the parents, decides the general

characteristics of an appropriate education both before, and in the face of, an adverse due

process determination.  Therefore, N.J.S.A. 18A:36A-11(b) does not conflict with the

rights of parents to determine, together with the IEP team, the proper education program

for a disabled student.

      Plaintiff further contends that N.J.S.A. 18A:36A-11(b) conflicts with the IDEA's

procedural requirement that parents must receive advance notice of a school agency's

proposal to change their child's educational placement by permitting a resident district to

challenge the IEP without prior parental notice.  However, "educational placement"

within the meaning of the IDEA refers to the provision of special education and related

services rather than a specific place, such as a specific classroom or specific school.  *See*

*U.S.D.O.E. Comments*, 71 Fed. Reg. at 62287 (Aug. 14, 2006); *see also Concerned*

*Parents & Citizens for the Continuing Educ. at Malcom X (PS 79) v. New York City Bd.*

*of Educ.*, 629 F.2d 751, 753 (2d Cir. 1980) ("[T]he term 'educational placement' refers

only to the general type of educational program in which the child is placed.").  Thus, the

reference to a "change" in "educational placement" in Section 1415(b)(1)(C) of the IDEA

would encompass only proposals to transfer a child from one type of program to another,

something the narrow challenge procedure of N.J.S.A. 18A:36A-11(b) does not permit.

As such, Plaintiff's other procedural challenge, that N.J.S.A. 18A:36A-11(b) prevents

parents from receiving a detailed description of a new program offered for their child, is

unfounded since the statute does not allow a resident district to propose a new program.

Rather, N.J.S.A. 18A:36A-11(b) permits challenges to a program's location, not its

substance.  Therefore, N.J.S.A. 18A:36A-11(b) does not conflict with the IDEA's "prior

notice" or "detailed description" requirements since it does not permit a district of

residence to challenge the *type* of special education decided-upon by the IEP team.

Lastly, Plaintiff alleges that N.J.S.A. 18A:36A-11(b) conflicts with the N.J.A.C.

6A:14-2.3 requirement that individualized education programs be implemented

immediately since a challenge under N.J.S.A. 18A:36A-11(b) would delay an IEP's

execution until the conclusion of a due process hearing.  However, this contention is

rejected by the Court because it rests upon an alleged conflict between a state statute and

a state regulation.  Nothing in the IDEA itself requires program implementation without

delay.  In addition, N.J.S.A. 18A:36A-11(b)'s challenge procedure does not preclude a

charter school from executing special education services for the student, it just postpones

their enforcement out of district until the conclusion of the due process hearing.

Therefore, Plaintiff has failed to prove beyond a reasonable doubt that N.J.S.A. 18A:36A-

11(b) is unconstitutional on its face.

Plaintiff further claims that the State Defendants' motion should be denied

because L.Y. has the right to put further facts in the record for the court to determine

12

whether it is unconstitutional as applied.  The Court finds this contention unmeritorious since Plaintiff represented in the proposed Joint Discovery Plan that discovery was not needed in this case.  Moreover, Plaintiff could have referred to the underlying administrative record to support her as-applied claim yet failed to do so.

Because the Court finds that N.J.S.A. 18A:36A-11(b) is constitutional, Plaintiff has no further claims against the State Defendants under the IDEA.  While the IDEA provides L.Y. with a right to appeal Administrative Law Judge Ellen Bass' decision to place J.Y. in-district, the Bayonne Board of Education is the only party implicated in such a challenge.  As such, all that remains of this case is an IDEA claim, vis-a-vis the Bayonne Board of Education, based upon the administrative record.

## III.   CONCLUSION

For the foregoing reasons, this Court will grant State Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  An appropriate form of order will be filed together with this Opinion.

  s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: March 29, 2011

13